United States District Court
Middle District of Florida
Jacksonville Division

**SANFORD ROBINSON,**

    *Plaintiff,*

v.                                                     **NO. 3:19-cv-292-J-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

---

### Order

Sanford Robinson brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. Under review is a decision by the Administrative Law Judge ("ALJ") dated April 10, 2018. Tr. 18–50. The alleged onset date is May 6, 2014. Tr. 39. Summaries of the law and the administrative record are in the ALJ's decision, Tr. 21–45, and the parties' briefs, Docs. 21, 22, and not fully repeated here.

Robinson was struck by a dump truck at work and required surgery to repair a femur fracture and therapy and rehabilitation to address that and other injuries. The ALJ found Robinson has severe impairments of degenerative disc disease of the lumbar spine with left lower extremity radiculopathy status-post surgeries, a prior right hip fracture status post open reduction internal fixation ("ORIF"), hypertension, monovision, diabetes mellitus, asthma, and obesity. Tr. 24. The ALJ found Robinson has no impairment or combination of impairments that meets or equals the severity of a listed impairment. Tr. 24. The ALJ found Robinson has the residual functional capacity ("RFC") to perform light work with additional limitations: he must not squat, crawl, climb ladders, operate foot controls, work at an unprotected height, operate

heavy moving machinery, or work near concentrated dust, fumes, or gas; and he can only occasionally bend, crouch, kneel, or stoop. Tr. 24. Based on the RFC and other factors, the ALJ found Robinson could not perform his past relevant work in construction but could work as a gate attendant, parking lot cashier, ticket seller, document scanner, order clerk, and lens inserter and those jobs exist in significant numbers in the national economy. Tr. 44. The ALJ therefore found no disability. Tr. 45.

Robinson argues the ALJ erred in considering the effects of his pain. Doc. 21 at 7–10.

To determine disability, the Social Security Administration ("SSA") considers pain and the extent to which the pain "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). Statements about pain alone cannot establish disability. *Id.* §§ 404.1529(a) & (b), 416.929(a) & (b). Objective medical evidence from an acceptable medical source must show a medical impairment that "could reasonably be expected to produce the pain" and, when considered with the other evidence, would lead to a finding of disability. *Id.* §§ 404.1529(a) & (b), 416.929(a) & (b).

The finding that an impairment could reasonably be expected to produce the pain does not involve a finding on the intensity, persistence, or functionally limiting effects of the pain. *Id.* §§ 404.1529(b), 416.929(b). For that finding, the SSA considers all available evidence, including medical history, medical signs, laboratory findings, and statements about how the pain affects the claimant. *Id.* §§ 404.1529(a) & (c), 416.929(a) & (c). The SSA then determines the extent to which the "alleged functional limitations and restrictions due to pain … can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how" the pain affects the ability to work. *Id.* §§ 404.1529(a), 416.929(a).

Factors relevant to pain include: daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication to alleviate the pain; treatment for the pain other than medication; and measures used to relieve the pain. *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

To determine the extent to which pain affects a claimant's capacity to perform basic work activities, the SSA considers statements about the intensity, persistence, and limiting effects of the pain; the statements in relation to the objective medical and other evidence; any inconsistencies in the evidence; and any conflicts between the statements and other evidence, including history, signs, laboratory findings, and statements by others. *Id.* §§ 404.1529(c)(4), 416.929(c)(4).

An ALJ must clearly articulate explicit and adequate reasons for rejecting a claimant's statements about pain.[1] *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). A court will not disturb a clearly articulated pain finding supported by substantial evidence. *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted).

Contrary to Robinson's arguments, the ALJ applied the correct standards in considering his pain, and substantial evidence supports the pain finding.

---

[1]Effective March 28, 2016, Social Security Ruling ("SSR") 16-3p rescinded a previous SSR on credibility of a claimant. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (republished). The SSR removed "credibility" from policy because the regulations do not use that term. *Id.* at *2. The SSR clarified that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Because the ALJ here issued his decision on April 10, 2018, Tr. 45, the new SSR applies here. *Cf. Hargress v. Soc. Sec. Admin.*, 883 F.3d 1302, 1308 (11th Cir. 2018) (holding new SSR did not apply because ALJ issued decision before SSR's effective date).

The ALJ summarized Robinson's statements, including his statements about his pain:

> [T]he claimant testified that he was born [in] January [] 1969. He indicated that he is married and has no children at home. The claimant stated that he completed the tenth grade, but he did not get his GED or any additional training. He indicated that he is 6'2" tall, weighs 310 pounds, and is right-handed. The claimant testified that he last worked on May 6, 2014, and he has not looked for work or registered for unemployment benefits since that time. Prior to that, he did construction work all of his life. He stated that this work ended because he was run over by a dump truck. The claimant indicated that he reached a settlement of $1,000,000, of which he received $300,000. He also filed a workers' compensation [claim] for which he received $50,000 in approximately 2016.
>
> The claimant stated that he had his second back surgery in February 2017, and Dr. Nottmeier has discussed having additional back surgery, because he continues to have back pain as well as pain in his hip. He indicated that he lies down about 2-3 times per day for about 1-2 hours each time. The claimant noted that he does not get much sleep at night, usually about a maximum of four hours. The claimant testified that he takes prescription medications (hydromorphine/Dilaudid, oxycontin, metformin, and lisinopril), which help; however, they cause him to feel drowsy and sleepy.
>
> He indicated that he spends his days watching television. He does not do much housework and does not do laundry. He cooks some, washes his plates, and sometimes takes out the trash, but he does not make his bed, vacuum, mop, sweep, or work in the yard. In an average 30-day month, the claimant goes out to eat 5 times. He indicated that he does not read or do crossword puzzles/word searches, but he listens to music/radio and uses his smart phone to go on Facebook, to go on the internet, and to text. The claimant stated that he does not have any other interests/hobbies right now. He indicated that he goes to the grocery store about once a week and he carries some of the packages. The claimant stated that he goes to church about twice per month. He visits with his father about twice a week and some of his brothers come to see him. The claimant stated that he gets along with his father "great." He indicated that he has a driver's license, and he drives about six days per week. When he drives, he goes to the grocery store, which is about one quarter of a mile from his home. He drove himself to the hearing, which took about 20 minutes. The claimant stated that his wife helps him put his shoes on and tie them, but he is able to bathe/shower himself. He

indicated that he continues to smoke about one-half package of cigarettes per day.

Tr. 38.

The ALJ summarized the medical evidence in detail—thirteen single-spaced pages. Tr. 25–38. The ALJ found Robinson's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but his statements about the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record "for the reasons explained in this decision." Tr. 38–39. The ALJ explained:

- By October 2014, after rehabilitation and physical therapy, Robinson had full strength, was ambulating with a non-antalgic gait, and required no cane. Tr. 39.

- He had no other complaints about hip pain until 2017, but Dr. Eric Nottmeier found nothing abnormal, and x-rays showed some lucency around the hip instrumentation but no dynamic instability. Tr. 39.

- He complained about low back pain and left leg pain after the accident and was diagnosed with degenerative disc disease of the lumbar spine with left lower extremity radiculopathy but has had a good to moderate response to his treatment regimen. He was prescribed medications, wore a lumbar corset, participated in physical therapy and a home exercise program, and was given epidural steroid injections that provided partial pain relief. He reported physical therapy had significantly helped. He reported improvement of his symptoms when he wore the corset, but he often did not wear it. Tr. 39.

- In June 2015, his treating orthopedic surgeon, Dr. Abraham Rogozinski noted he entered and exited the examination room multiple times, had a non-antalgic gait, required no assistive device, and had only mild difficulty moving from sitting to standing. He had decreased sensation, but his lower extremity strength remained normal, and his thighs and calves were not atrophied. Tr. 39.

- Dr. Rogozinski noted that during a May 2015 functional capacity evaluation, Robinson demonstrated lack of consistent, determined effort, inappropriate pain behaviors, no competitive test performance, and positive Waddell's signs. Tr. 39.

- Robinson sought treatment in August 2015 after trying to return to work. Dr. Rogozinski recommended surgery to address a significant progression of L4-5 disc herniation, he underwent the surgery in September 2015, and afterward he reported an improvement of his low back pain and a complete resolution of his left leg pain. He sought no further treatment for back and leg pain in 2015 and denied back pain at an appointment in December 2015. Tr. 39–40.

- He did not return to see Dr. Rogozinski until February 2016. He had full but painful range of motion in his lumbar spine, a normal gait without the use of an assistive device, and normal strength in his lower extremities. Tr. 40.

- He did not return to Dr. Rogozinski until August 2016, and two unrelated examinations in the interim revealed normal motor function and strength in his lower extremities. He had not had any injections since his last visit in February 2016. Tr. 40.

- In August 2016, Dr. Nottmeier diagnosed him with a recurrent L4-5 disc herniation, though he continued to have normal strength, and his sensation was now diffusely intact to simple touch. He received epidural steroid injections, used medications, and participated in therapy but had to undergo a "redo" of his surgery. Afterward, he reported complete resolution of his left lower extremity symptoms. Tr. 40.

- He told pain management providers he was doing well on medications and his low back pain was under control. His strength, sensation, and gait have remained normal. Tr. 40.

- Although he testified medication made him drowsy and sleepy, the only side effect noted in a treatment record was constipation. Tr. 40.

- He reported activities of daily living inconsistent with an inability to perform all work: driving six days a week, cleaning, preparing simple meals, washing plates, taking out trash, going to the grocery store, carrying some packages, going to church, and visiting his father and brothers. Tr. 40.

- He has hypertension controlled by medication when he takes it. He has monovision in his right eye but has worked with it before. He had diabetes mellitus but had never needed insulin and has no complications. He has a history of asthma but no ongoing diagnosis

or treatment for it. And he is obese, but his obesity does not prevent him from working. Tr. 40, 41, 42.

The ALJ further explained he was giving great weight to Dr. Rogozinski's opinions that Robinson had reached maximum medical improvement and could perform a limited range of medium work. Tr. 42. The ALJ explained the RFC includes light—not medium—work because of the second disc surgery. Tr. 42. The ALJ further explained he was giving great weight to the opinion of state-agency medical consultant Loc Kim Le, M.D., that Robinson could perform light work. Tr. 42, 149–52, 162–65. The ALJ explained that because Dr. Le had rendered his opinion before Robinson's second disc surgery, the ALJ credited it as generally consistent with Robinson's improvement after the first surgery. Tr. 42. The ALJ explained he included additional non-exertional limitations in the RFC even though evidence showed the second disc surgery resolved Robinson's symptoms. Tr. 42.

The evidence described by the ALJ constitutes substantial evidence to support the pain finding.

Robinson observes he reported being able to do the activities the ALJ described before March 2017, when he was prescribed Tramadol, Norco, Dilaudid, oxycodone, and hydromorphine. Doc. 21 at 9–10. The ALJ understood Robinson was on various pain medications, mentioning them throughout the decision. *See* Tr. 27, 30, 31, 33–42. Even without consideration of the activities described before the prescriptions, the evidence described by the ALJ constitutes substantial evidence to support the pain finding.

Robinson observes the ALJ failed to state the weight he was giving the opinions of Dr. Nottmeier and doctors at a pain institute.[2] Doc. 21 at 10. Robinson shows no

---

[2]Perfunctory arguments, devoid of citation to authorities, are generally deemed abandoned. *Gombash v. Comm'r, Soc. Sec. Admin.*, 566 F. App'x 857, 858 n.1 (11th Cir. 2014). To the extent Robinson attempts to argue error in failing to state the weight given to the opinions, he has abandoned the argument through insufficient argument.

7

reversible error. The ALJ discussed the records of Dr. Nottmeier and the pain institute at length and implicitly gave them great weight. *See* Tr. 32–40. Robinson identifies no particular medical opinion the ALJ should have weighed differently.

Robinson argues his ability to perform daily tasks does not mean he can work considering his need to lie down. Doc. 21 at 10. The argument is unpersuasive. Robinson does not point to any opinion that he needs to lie down, and the ALJ rejected his testimony that his medication causes drowsiness and sleepiness because he reported only constipation as a side effect. Tr. 40, *see* Tr. 830–32. Robinson does not challenge that finding.

The Court **affirms** the Commissioner's decision and **directs** the clerk to enter judgment for the Commissioner and against Sanford Robinson and **close** the file.

**Ordered** in Jacksonville, Florida, on September 30, 2020.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:	Counsel of record